UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TERRI L. BOWEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:16cv00016 PLC |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Terri L. Bowen ("Plaintiff") seeks review of the decision of the Social Security Administration denying her applications for Disability Insurance Benefits and Supplemental Security Income from her alleged onset date of November 1, 2011 until July 29, 2014.[2] Because the Court finds that substantial evidence supports the decision to deny benefits for the period in question, the Court affirms the denial of Plaintiff's applications.

### I. *Background and Procedural History*

In February 2012, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income alleging she was disabled as of November 1, 2011 as a result of: arthritis, "chronic pain throughout body," right arm numbness, "hips give out," asthma, and chronic obstructive pulmonary disease ("COPD"). (Tr. 413-24). In May 2014, an administrative law judge ("ALJ") conducted a hearing and, on August 20, 2014, entered a decision denying

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 13).

Plaintiff's applications for benefits.[3] (Tr. 134-54). On July 29, 2014, between the dates of Plaintiff's hearing and the ALJ's decision, Plaintiff underwent a mammogram and subsequently received a diagnosis of invasive ductal breast cancer. (Tr. 765-66).

Plaintiff appealed the ALJ's decision and submitted new evidence of breast cancer. (Tr. 294-98). The Social Security Administration ("SSA") Appeals Council vacated the ALJ's decision and remanded the case to a different ALJ for additional proceedings. (Tr. 155-57). In the remand order, the SSA Appeals Council directed the ALJ, in relevant part, to: "Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p)." (Id. at 157).

Pursuant to the remand order, the ALJ conducted a hearing on August 25, 2015. (Tr. 33-68). An impartial medical expert, Dr. Lee Fischer, Plaintiff, and a vocational expert testified at the hearing. Id. In a partially favorable decision dated October 14, 2015, the ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920[4] and concluded: "[Plaintiff]

---

[3] In that decision, the ALJ found that Plaintiff was not under a disability from November 1, 2011 through the date of the decision because she had the residual functional capacity to perform light work with the following limitations:
> [S]he can lift and carry 10 pounds occasionally and 5 pounds frequently, with the dominant right upper extremity, lift and carry 20 pounds occasionally and 10 pounds frequently with the left upper extremity, and stand, sit, and walk 6 hours each in an 8-hour workday. She cannot crawl or climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, stoop, kneel, or crouch. She can occasionally operate hand controls and reach overhead with the dominant right upper extremity. She must avoid even moderate exposure to vibration, extreme cold, heat, humidity, wetness, fumes, odors, dusts, gases, poor ventilation, and pulmonary irritants, and should not work an unprotected heights or around dangerous moving machinery.

(Tr. 141).

[4] To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or

2

was not disabled prior to July 29, 2014[, the date of her breast cancer diagnosis,] but became disabled on that date and has continued to be disabled through the date of this decision[.]" (Tr. 20) (citations to regulations omitted).

The ALJ found that, since the alleged onset date of disability (November 1, 2011), Plaintiff had the severe impairments of: osteoarthritis, right shoulder impingement, COPD, and mild degenerative disc disease; and the non-severe impairments of hypertension, headaches, obesity, and hyperactive bladder. (Tr. 13). After reviewing Plaintiff's testimony and medical records and finding that Plaintiff was "not entirely credible," the ALJ found that, between November 1, 2011 and July 29, 2014, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with specified limitations. (Tr. 14). The ALJ further determined that, since November 1, 2011, Plaintiff was unable to perform any past relevant work, but, for the period between November 1, 2011 and July 29, 2014, there existed a significant number of jobs in the national economy that she was capable of performing. (Tr. 18).

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review on January 12, 2016. (Tr. 1-5) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II. Standard of Review

A court must affirm the ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In

---

mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (internal quotation marks omitted) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

### III. Discussion

Plaintiff claims substantial evidence does not support the ALJ's determination that she was not disabled from November 1, 2011 through July 29, 2014. (ECF No. 18). Plaintiff contends that the ALJ erred in failing to: (1) comply with the SSA Appeals Council's remand order; and (2) accord "any weight to the lay evidence of onset." (Id. at 8-15). In response, Defendant asserts that: (1) the ALJ complied with each of the SSA Appeals Council's directives; (2) substantial evidence supported the ALJ's RFC finding; and (3) the ALJ properly evaluated the third-party statements of record. (ECF No. 25).

#### A. Failure to comply with remand order

Plaintiff contends that the ALJ did not comply with the SSA Appeals Council's order to "give further consideration to the Plaintiff's maximum functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (ECF No. 18 at 8-12). Although couched in terms of a failure to comply with the remand order, Plaintiff, in fact, argues that, in formulating her RFC, the ALJ failed to: (1) adequately address Plaintiff's COPD and pain in her shoulder, neck, and back; and (2) assign proper weight to the opinion of Plaintiff's treating physician. Id. Defendant counters that the ALJ complied with the remand order in that he re-examined the entire medical record and cited the clinical findings and medical opinions that supported his RFC finding. (ECF No. 25 at 7). Defendant further asserts that the ALJ: (1) accounted for Plaintiff's COPD and musculoskeletal pain by limiting her to sedentary work; and (2) properly assigned reduced weight to the treating physician's opinion because it was inconsistent with the evidence as a whole. (Id. at 7-14).

*1. RFC determination*

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). See also Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)). The claimant bears the burden of "persuasion to prove disability and demonstrate" his or her RFC. Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotation marks omitted) (quoting Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010)).

In this case, the ALJ thoroughly reviewed Plaintiff's medical records, opinion evidence, and testimony in formulating her RFC. The ALJ found that, between November 1, 2011 and July 29, 2014, Plaintiff had the residual functional capacity to perform sedentary work with the following limitations:

> [Plaintiff] was unable to climb ladders, ropes, or scaffolds. The claimant was limited to occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. [Plaintiff] was unable to engage in overhead reaching with the right upper extremity and was limited to frequent reaching in all other directions. [Plaintiff] could frequently handle, finger, push, and pull with the right upper extremity. [Plaintiff] had to avoid hazards such as unprotected heights and moving and dangerous machinery. She had to avoid concentrated exposure to pulmonary irritants such as fumes, dust, and gases.

(Tr. 14).

Plaintiff asserts that the ALJ "failed to consider that prior to her diagnosis of breast cancer she had severe COPD that now has her on oxygen." (ECF No. 18 at 9). However, contrary to Plaintiff's claim, the ALJ specifically addressed the impact of Plaintiff's "respiratory symptoms" on her RFC prior to her July 2014 breast cancer diagnosis. (Tr. 16). The ALJ noted that, in October 2012, Plaintiff "was evaluated for her COPD" and "exhibited normal oxygen saturation levels and respiratory signs." (Tr. 15). The ALJ also wrote: "In February 2013, the claimant continued to have problems with COPD and she exhibited wheezing during her exam. One month later, she sought emergency room treatment for coughing up blood, but her chest x-rays were normal." Id. (citations to the record omitted). The ALJ further observed that imaging of Plaintiff's chest from May 2014 "showed that she had right basal linear atelectasis and a nodule in her left lobe" and, during a consultative examination in July 2014, Plaintiff "exhibited wheezing during her examination but her oxygen saturation levels were normal." Id.

In addition to noting Plaintiff's history of COPD, the ALJ expressly accounted for Plaintiff's respiratory symptoms in the RFC. The ALJ determined: "While the claimant had

6

evidence of coughing, wheezing . . . she exhibited overall intact pulmonary functioning" and Plaintiff's "spirometry tests and oxygen saturation during her exams indicated that she had overall normal pulmonary functioning[.]" Id. The ALJ therefore found that Plaintiff's respiratory condition, combined with Plaintiff's other impairments, "[l]imited her to performing sedentary exertion with the postural, manipulative, and environmental limitations included in the residual functional capacity." Id.

Based on the record, the Court finds that the ALJ properly considered Plaintiff's COPD when formulating the RFC and the medical evidence relating to Plaintiff's COPD does not support more severe limitations. "The mere fact that working may cause pain or discomfort does not mandate a finding of disability[.]" Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

Plaintiff also argues that the ALJ failed to properly consider her musculoskeletal impairments – namely, osteoarthritis, right shoulder impingement, and mild degenerative disc disease – when formulating her RFC. (ECF No. 18 at 9-12). However, the ALJ included these impairments in his review of the evidence and accounted for them in the RFC. The ALJ wrote that, in November 2011, Plaintiff "complained of neck and shoulder pain" and "exhibited tenderness with rotation and [] was diagnosed with right shoulder osteoarthritis and sternoclavicular joint pain." (Tr. 15). Medical imaging of Plaintiff's right shoulder revealed Plaintiff "had small osteophytes with subchondral geodes and sclerosis" and a "hypertrophic stenoclavicular joint." Id. Additionally, the ALJ observed that, during a consultative examination in April 2012, Plaintiff "exhibited tenderness in her right trapezius, thoracic vertebrae, [] right sternoclavicular joint[,]" and "decreased range of motion in her right shoulder[.]" Id. In May 2014, "x-rays of claimant's right shoulder showed that she had a laterally downsloping acromion" and, in July 2014, Plaintiff "exhibited pain with motion in her

right shoulder and tenderness to palpation" and "was diagnosed with possible right shoulder arthralgia versus arthritis[.]" (Tr. 16).

The ALJ considered the evidence of Plaintiff's shoulder, neck, and back pain from the alleged onset date and factored it into the RFC. The ALJ explained that, while Plaintiff suffered musculoskeletal pain, she exhibited "significant motor functioning." (Tr. 16). Consequently, the ALJ found that "while the claimant experienced limited range of motion in her right shoulder, lumbar tenderness," she could perform a range of sedentary work with limitations, including a prohibition on overhead reaching with the right arm. Id. The ALJ further limited Plaintiff to no climbing ladders, ropes, or scaffolds and occasionally stooping, kneeling, crouching, crawling, and climbing ramps and stairs. Id.

Based on the foregoing, the Court concludes that the record contains substantial evidence to support the ALJ's RFC assessment, which properly accounted for Plaintiff's musculoskeletal pain. Although Plaintiff cites evidence that might support a contrary decision, substantial evidence supports the ALJ's RFC determination and, as such, this Court is required to affirm. See Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007).

   *2. Treating physician opinion*

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ "improperly gave little weight to the opinion of treating physician, Dr. Jan Onik." (ECF No. 18 at 9). "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir. 2008) (quoting Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other

8

medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Id. (quoting Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001)). See also Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). Whether the ALJ grants a treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Based on the record, it appears that Dr. Onik treated Plaintiff's neck and back pain in November and December 2011. (Tr. 567-83). Dr. Onik resumed treating Plaintiff in May 2014, when Plaintiff sought treatment for her COPD and pain in her shoulder, back, joints, elbow and hip. (Tr. 567-83, 738-81).

In June 2014, Dr. Onik completed a medical source statement ("MSS") relating to Plaintiff's mental ability to perform work-related activities. (Tr. 738-40). Dr. Onik opined that, as a result of "poor cardiovascular circulation," Plaintiff was mildly limited in her ability to understand, remember, and carry out simple instructions and moderately limited in her ability to understand, remember, and carry out complex instructions.[5] (Tr. 738). Dr. Onik affirmed that Plaintiff's disability began on November 1, 2011. (Tr. 740).

Dr. Onik completed an MSS of Plaintiff's physical ability to perform work-related activities in November 2014, several months after Plaintiff was diagnosed with breast cancer. (Tr. 307-10). In the statement, Dr. Onik again affirmed that Plaintiff's disability began on November 1, 2011. (Tr. 310). Dr. Onik reported that Plaintiff "would sometimes need to lie down at unpredictable intervals during an 8 hour working shift" and could: occasionally lift or

---

[5] Although Dr. Onik checked the box stating that Plaintiff's impairments did not affect her ability to interact appropriately with supervisors, co-workers, and the public, Dr. Onik checked individual boxes indicating that each of these abilities was moderately restricted. (Tr. 739).

9

carry less than ten pounds; sit less than two hours in an eight-hour workday; stand or walk less than two hours in an eight-hour workday; sit thirty minutes at a time; and stand twenty minutes at a time.[6] (Tr. 307). In addition, Dr. Onik stated that Plaintiff could never stoop, crouch, or climb ladders, but could occasionally twist, climb stairs, reach, handle, finger, feel, push, and pull. (Tr. 308). Dr. Onik estimated that Plaintiff would miss work more than four days per month, be off-task at least 25% of the day, and require more than ten unscheduled breaks during a work day. (Tr. 309-10).

The ALJ thoroughly reviewed Dr. Onik's treatment notes, evaluations, and MMS's and explained his reasons for assigning Dr. Onik's opinions "reduced weight." (Tr. 18). The ALJ discredited the June 2014 mental MSS, because: "there is no indication in the claimant's medical records to indicate that she experienced decreased concentration, social functioning, or an inability to care for her needs as a result of her impairments." (Tr. 17). As to the November 2014 physical MSS, the ALJ stated that Plaintiff's medical records contained "no indication that the claimant's COPD, right shoulder pain, or lumbar tenderness would cause her to miss more than four days of work per month." (Tr. 17). The ALJ explained: "[A]lthough the claimant exhibited tenderness and reduced range of motion in her shoulder prior to her established onset date, her overall basic motor functioning remained intact and there was no indication that she would require breaks to lie down, would be off-task, or would need to miss significant periods of work as a result of her pain." (Tr. 18).

The Court finds that the ALJ gave proper weight to Dr. Onik's opinions as they pertained to the period of time between November 2011 and July 2014. Nothing in Dr. Onik's treatment notes supports her statements that Plaintiff's mental and social functioning were mildly to

---

[6] In response to the question, "what medical findings support the limitations described above?," Dr. Onik attributed the limitations to Plaintiff's cancer and cancer treatments. (Tr. 307).

10

moderately limited and Plaintiff would miss work more than four days per month, be off-task at least 25% of the day, and require more than ten unscheduled breaks per workday. "A treating physician's own inconsistency may [] undermine [the doctor's] opinion and diminish or eliminate the weight given [the doctor's] opinions." Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006)) (first alteration in original).

Additionally, the medical evidence did not support the severity of the limitations contained in Dr. Onik's opinion. For example, Dr. Onik found that Plaintiff could sit thirty minutes at a time, stand twenty minutes at a time, and only occasionally reach, handle, or finger. However, in April 2012, a consultative examiner found that, despite Plaintiff's reduced range of motion in her right arm, she had fair upper extremity strength, "would not have major problems with activities sitting or even standing for 2-3 hours interrupted by breaks," and "manual dexterity again is not impaired[.]" (Tr. 591). In a follow-up examination with her primary care physician in October 2012, Plaintiff reported no neck pain and had a normal chest exam. (Tr. 642). Plaintiff also had normal chest, lung, and cardio examinations in February 2013 and October 2013. (Tr. 726). In July 2014, another consultative examiner found that Plaintiff had "full motor strength in upper and lower extremities," normal lumbar flexion, and "could put her arms over her head." (Tr. 744-48). "An ALJ may reject a treating physician's opinion if it is inconsistent with the record as a whole." McCoy v. Astrue, 648 F.3d 605, 616 (8th Cir. 2011).

In sum, Plaintiff fell short of meeting her burden to establish that her RFC was more restricted than the ALJ determined. See Hensley v. Colvin, 829 F.3d 926, 931-32 (8th Cir. 2016). The Court therefore finds that the ALJ properly considered Plaintiff's COPD, musculoskeletal pain, and treating physical opinion when formulating the RFC.

*B. Lay opinions*

Plaintiff argues the ALJ erred "in failing to accord any weight to the lay evidence of onset," specifically, the reports completed by Plaintiff's brother and daughter. (ECF No. 18 at 12-15). Defendant counters that the ALJ properly evaluated the third-party statements of record. (ECF No. 25 at 14-16).

"Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the SSA states it "will carefully consider any other information" a claimant submits about claimant's symptoms, including information provided by other persons. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including . . . statements and other information provided by . . . other persons about the symptoms and how they affect the individual. . . ." SSR 96–7P, 1996 WL 374186 (S.S.A.1996).

Importantly, the ALJ has more discretion to discount non-medical opinion evidence than medical opinion evidence, and may consider any inconsistencies between the non-medical opinion and other evidence in the record. Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005). Questions of credibility are primarily for the ALJ to decide, and a court "will normally defer" to the ALJ's credibility determination so long as the ALJ supports the determination with good reasons. Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003).

Here, Plaintiff's brother and daughter completed questionnaires about Plaintiff's impairments and functional abilities in March 2014. (Tr. 514-16, 518-20). Plaintiff's brother stated that Plaintiff: was unable to walk or sit "for very long [because] her back, hip[s], and legs want to give out"; suffered pain from "her head to her toes"; "choke[d] and vomit[ed] from the condition her lungs are in"; and struggled to "accomplish[] simple tasks d[ue] to remembering,

12

concentrating and staying focused and physically capable." (Tr. 514-16). Likewise, Plaintiff's daughter reported that Plaintiff: was "short of breath a lot"; suffered pain "throughout her entire body," making it "extremely difficult for her to perform simpl[e] daily tasks"; "has days she cannot walk"; and requires a cane or wheelchair "because she loses her balance often." (Tr. 518-20). Neither report provided an onset date, either by agreeing or disagreeing with Plaintiff's claimed date of November 1, 2011 or by providing an alternate date.

The ALJ considered the reports filed by Plaintiff's brother and daughter, found they were "not fully credible," and assigned them "reduced weight because they are not consistent with the objective evidence." (Tr. 16). The ALJ explained: "Their statements that the claimant is limited to sitting, standing, and walking for short periods is not supported by the mild findings in the claimant's lumbar imaging and her otherwise intact gait and motor strength." Id.

To the extent Plaintiff contends the ALJ gave insufficient consideration to her brother's and daughter's reports, the ALJ discounted their assertions regarding Plaintiff's limitations for the same reasons he found Plaintiff's claims not credible. An ALJ may discount corroborating testimony from third parties on the same basis used to discredit a claimant's testimony. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 1998).

In arguing that the ALJ erred in failing to consider the lay opinions as evidence of Plaintiff's onset date of disability, Plaintiff cites Social Security Ruling (SSR) 83-20. However, that SSR does not support Plaintiff's position. SSR 83-20 describes the "relevant evidence to be considered when establishing the onset date of disability[.]" SSR 83-20, 1983 WL 31249. When determining the onset date for a progressive impairment, such as Plaintiff's, the ALJ should consider the claimant's allegations, work history, and the medical and other evidence, such as "information . . . obtained from family members." Id.

In this case, the ALJ considered, among other evidence, information obtained from Plaintiff's family members and found it incredible. Because substantial evidence supports the ALJ's decision to assign the third-party reports reduced weight, the Court defers to his determination.

## IV. *Conclusion*

For the reasons discussed above, the undersigned finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff was not disabled between November 1, 2011 and July 29, 2014.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff for the period November 1, 2011 to July 29, 2014 is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of December, 2017